UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Supreme Raheem Ackbar *a/k/a Ronald Gary,* <br><br> Plaintiff, <br><br> vs. <br><br> Michael McCall, Sergeant Bogastroke[2], Lt. McPherson, Officer McCants, Captain Stonebreaker, Rammarine Jaglal, Lieber CI Dentist, and Gwendolyn T. Stokes, Registered Nurse ll, Lee Correctional Institute, <br><br> Defendants. | ) C/A No. 4:14-2246-RMG-TER <br> ) <br> ) <br> ) <br> ) <br> ) Report and Recommendation <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## **I. PROCEDURAL BACKGROUND**

The Plaintiff proceeding *pro se*, filed this action under 42 U.S.C. § 1983[1] on June 11, 2014. Plaintiff filed an amended complaint on November 21, 2014. (Doc. #32). Plaintiff is a prisoner in the custody of the South Carolina Department of Corrections. Plaintiff is currently housed at the Lieber Correctional Institution and was formerly housed at Lee Correctional Institution "LCI". Plaintiff filed motions for summary judgment. (Docs. #31 and #40).

Defendants filed a motion to dismiss or, in the alternative, a motion for summary judgment on January 15, 2015. (Doc.#57). As matters outside of the pleadings were submitted by the parties, the undersigned will treat this motion as one for summary judgment under Rule 56 of the Federal

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] Defendants assert that the correct spelling is Borgersrode.

Rules of Civil Procedure. Because Plaintiff is proceeding *pro se*, he was advised on or about January 16, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendants' motion for summary judgment could result in dismissal of his complaint. The Plaintiff filed a response in opposition on January 28, 2015. (Doc. #63).

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e);

Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves).  Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any."  Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B.  ARGUMENT OF PARTIES/ANALYSIS

In his amended complaint, Plaintiff alleges that while incarcerated at LCI on March 12, 2013, he was "viciously struck in the face with a pair of steel barber hair clippers" and suffered "broken teeth, split gums, upper lip, and swelling of my entire jaw and bottom facial area."  (Amended

complaint, Doc. #32). Plaintiff alleges that after the incident, he immediately requested medical attention by notifying Sgt. Borgersrode who "clearly saw the blood on my clothing, saw the condition of my facial area and mouth, but he still refused to allow me to go to medical" due to the housing unit being on lock-down. Plaintiff asserts that while the LCI dentist issued an order for him to report to the dental office on March 19, 2013, he was "denied by Lee C.I. Lt. McPherson, stating per the order of Lee C.I. Warden, who at that time was Michael McCall, the housing unit in which I was on lock-down and there was no inmate movement, further delaying and denying me medical attention for my visible injuries. . ." (Id.). Plaintiff asserts that Lt. McPherson could see the swelling on his face and injuries to his mouth but still refused to contact medical to come see him. (Id.). Plaintiff alleges that from March 12, 2013, to March 30, 2013, his "efforts" to receive medical treatment were denied by Defendants Warden McCall, Sgt. Borgersrode, and Lt. McPherson. (Id.). On March 30, 2013, Plaintiff approached Sgt. Craig and begged her to assist him in receiving medical treatment. (Id.). After seeing his injuries, Sgt. Craig immediately assisted him to medical where the nurse examined his face and injuries giving him Ibuprofen for the pain and placing him on the list to see the doctor on April 1, 2013. (Id.). On April 1, 2013, Plaintiff was told that medical was not going to see him. (Id.). On April 2, 2013, Plaintiff was in excruciating pain and walked to the plaza gate at LCI asking to go to medical but was informed that his name was not on the list. (Id.). However, after Officer McCants saw the swelling in his Plaintiff's face, Sgt. McCants called medical. (Id.). Sgt. McCants informed Plaintiff that the nurse stated since he was seen on March 31, 2013, he would have had to complete a staff request to be have been seen on April 1, 2013. (Id.). When Plaintiff refused to obey directives to leave the area and return to lock-up and continued to ask for medical attention, Capt. Stonebreaker sprayed him with chemical munitions. (Id.).

4

Defendants submitted the affidavit of Dr. William Akerman, who attests that he is the Director of Dental Services for the SCDC. (Akerman affidavit). He attached a copy of Plaintiff's Dental Health treatment records and Inmate Grievance Form No, 1775-13 (Step 1 and Step 2) filed June 9, 2013, regarding request for medical treatment. (Id.). At the time of the allegations, Plaintiff was an inmate in the SCDC housed at LCI. (Id.). Based on the records, Dr. Ackman attests that Plaintiff had a follow up dental appointment that he failed to appear for due to a lockdown in his housing unit. (Id.). The appointment was a follow-up from an October 24, 2012, appointment for a requested cleaning. (Id.). On April 18, 2013, Plaintiff was seen by the dental department regarding his upper right anterior teeth. (Id.). It was noted that #5 was fractured below the gum line and was therefore extracted. (Id.). Teeth #6 and #10 were sensitive to touch and an x-ray noted some possible inflammation or necrosis of the tooth pulp pertaining to these teeth. (Id.). The inflammation could be idiopathic or trauma related. (Id.). If it is trauma related, it is hard to determine the timing of the trauma as something from years ago could lead to this problem. (Id.). Tooth #8 was partially fractured. Plaintiff was prescribed Amoxicillan 500 mg,. Ibuprofen 600 mg, Tylenol 3 for three days, and a soft diet for seven days. (Id.). There was no need for extraction of tooth #8 at that time and it was possible that the tooth would function fine in its partially fractured state and there was no exposed nerves associated with this tooth. (Id.). On May 9, 2013, Plaintiff had a follow up dental appointment where he complained of pain in teeth #10-#11 area and an x-ray was taken. (Id.). Plaintiff did not want to extract any more teeth at this time and requested an outside treatment form which was provided. (Id.). On August 27, 2013, Plaintiff was seen by dental for follow up. It was noted that tooth #8 was partially fractured but Plaintiff did not express a desire at this time to have any teeth extracted. (Id.). Plaintiff was seen in the dental clinic for a cleaning on January 21, 2014.

On September 23, 2014, and September 30, 2014, Plaintiff was not able to keep his dental appointments due to lockdown. (Id.). On October 7, 2014, the General Medical Summary indicated that Plaintiff was scheduled for a dental appointment but it was cancelled due to his failure to cooperate and his ill-temper. (Id.). Plaintiff was seen at the Dental Clinic on January 13, 2015. X-rays revealed that the inflammation of the tooth pulp had resolved and no further teeth extraction was warranted. (Id.). Dr. Akerman states that Plaintiff was prescribed antibiotics, anti-inflammatory and pain medications as appropriate to treat his complaints and that the care he received was appropriate and timely. (Id.). However, Dr. Akerman attests that even if Plaintiff had requested medical attention on March 12, 2013, which Defendants assert he did not, the treatment would not have been any different. Dr. Akerman attests that the treatment would have been nominal to provide time for the teeth to heal and allow a proper assessment of his teeth and gums. With Regard to Plaintiff's mouth and teeth complaints, Dr. Akerman attests that in his opinion he received care which was well above the reasonable standards required, that at no time did his condition become serious or life-threatening, and there is no indication that he had any significant injury or health condition that was left untreated.

Defendants submitted the affidavits of Chris Borgersrode, Wicliffe McPherson, and Shirley McCants who attest that they do not provide medical treatment of inmates but refer an inmate who requests medical treatment to the appropriate medical personnel. (Affidavits, doc. #57-2, 57-4, and 57-5). All non-emergency medical issues are addressed by inmates completing Request to Staff forms which are referred to the Medical Department who then issues an Order to report. (Id.). If an inmate's unit is on lock down, the appointment is cancelled until the security matters are resolved. (Id.). If it is an emergency, the Medical Department is contacted and they would evaluate the person

and provide further instructions. (Id.). Complaints of a headache and/or tooth hurting, absent other severe complications, would not constitute an emergency. (Id.). In addition, Wicliffe McPherson attests that he is employed as a Lieutenant at LCI and does not recall any injuries or significant distress experienced by Plaintiff from March 12, 2013, until he transferred from LCI. (Affidavit, doc. #57-4).

Additionally, Borgersrode attests that he is currently employed at Kershaw Correctional Institution and is not aware of any attempts to deprive Plaintiff of medical care. (Doc. #57-2). He recalls Plaintiff presenting an Order to Report to medical on March 19, 2013, but, due to security related matters, there was no movement allowed and the housing unit was on lockdown. (Doc. #57-2.). Plaintiff's report to medical was not an emergency but for a scheduled dental appointment. (Id.). Borgersrode did not observe any distress or serious medical condition which required treatment on that day and does not have knowledge of any incident involving the Plaintiff where he was in need of medical attention and it was not provided. Borgersrode attests that he did not observe or know of any injuries he sustained on March 12, 2013. (Id.).

In addition to the above, Shirley McCants attests that she is employed as an Officer at LCI and does not recall any injuries or significant distress experienced by Plaintiff on April 2, 2013. (Affidavit, doc. #57-5). It is her understanding that Plaintiff was transferred from LCI in July 2013. (Id.). On April 2, 2013, Plaintiff approached McCants in the Plaza Gate area stating he needed to go to medical but did not appear to have any serious medical condition. However, based on his complaints, McCants checked the sick call list and his name was not listed. (Id.). McCants called medical to verify whether or not Plaintiff was supposed to be there and was told that he had been seen over the weekend and did not have an appointment on that day. (Id.). When McCAnts advised

7

Plaintiff that he did not have an appointment, he refused to leave, listen or leave. (Id.). Captain Stonebreaker entered the area and observed the Plaintiff's non-cooperative behavior. (Id.). McCants attests that the phone rang and when she returned from the office at the Plaza Gate, Plaintiff was on top of Captain Stonebreaker. (Id.). McCants called for first responders who subdued the situation. McCants attached a copy of her incident report to the affidavit. (Id.).

Defendants submitted the affidavit of Gwendolyn T. Stokes who attests that she is the Health Care Authority at LCI and is in charge of the nurses and medical administration at the facility. (Stokes Affidavit, doc. #57-6). Before her current position, she was head nurse. (Id.). Stokes is aware that Plaintiff has alleged she denied or delayed him medical treatment on or around April 13, 2013. (Id.).[2] Stokes attests that she was not on duty at 4:00 am on April 13, 2013, and did not have an encounter with Plaintiff on or around this time period as alleged. (Id.). Stokes asserts that she only spoke on the telephone to Plaintiff's mother on April 8, 2013, and April 12, 2013, informing her each time that she was not allowed to discuss his medical condition and that all medical requests are reviewed. (Id.). On April 12, 2013, Stokes requested that Plaintiff be called up and reviewed, and he was seen by Nurse Elouise Montgomery on April 13, 2013. (Id.). Stokes attests that she is unaware of any document that Plaintiff claims she fraudulently procured from him or through Nurse Montgomery. (Id.).

Defendants submitted the affidavit of Michael McCall who attests that he is employed as the

---

[2] Medical Encounter 42 dated April 8, 2013, by Nurse Stokes states that "Ms. Florence Gary called, stated she is mother to inmate. States he is having problem with his teeth and eating. Afraid he is going to get an infection and wants medication for him. Advised Ms. Gary that there is not a medical release on file, so I cannot discuss medical info with her." (Doc. 57-9, p. 18 of 25). Medical Encounter 45 on April 12, 2013, by Nurse Stokes states that "Mother, Rose Gary, called, state that inmate could not eat and in a lot of pain with his mouth. Advised Ms. Gray that I still cannot share info with no release on file." Id.

8

Deputy Director of Operations. (McCall affidavit, doc. #57-7). Prior to this position, McCall was the Deputy of Programs from September 2013 to September 2014, and Warden at LCI from April 2012 to September 2013. (Id.). Based on a review of Plaintiff's records, there is no evidence of Plaintiff's involvement in any altercation on March 12, 2013, as alleged other than being subject to a lockdown which occurred as a result of an incident involving two other inmates. (Id.). Pursuant to policy and procedure, when a housing unit is on lockdown, the inmates are not allowed to attend doctor visits unless it is an extreme emergency. (Id.). If there is an urgent need for medical attention, medical is called to come to the inmate. (Id.). Medical issues are addressed by the inmate filling out a medical request form and giving it to a staff member who then refers it to the medical department who then determines when and in what order inmates will be seen. (Id.). McCall attached copies of two Inmate Grievance forms filed by Plaintiff and a copy of a Disciplinary report and Hearing Record. McCAll attached Inmate Grievance Form No. 1233-13 filed on April 13, 2013, in reference to Plaintiff's request for medical related to his face and teeth as a result of the March 12, 2013, incident. (Id.). McCall attests that his decision on the Step 1 grievance form dated April 23, 2013, informed Plaintiff that his concerns had been reviewed and he had been treated properly when he was seen by medical on April 13, 2013, with no signs of old contusions or any infections and the medical records were forwarded to the physician for his review. (Id.). The Step 2 Grievance Form No. 1233-13 was signed by an employee of the medical department on July 29, 2013, stating that Plaintiff's medical records had been reviewed and investigated. (Id.). In the Step 2 response, it was noted that Plaintiff did not report injuries to security staff immediately following the incident or he would have been seen at that time. (Id.). The response further states that the Medical Department did not receive his request to Staff dated March 28, 2013, until April 2, 2013, but that Plaintiff

9

signed up for sick call on March 30 and was seen that day. (Id.). Plaintiff was scheduled for follow-up on April 8, but failed to appear. (Id.). Plaintiff's April 7, 2013, Request to Staff was received by medical on April 9 and his April 9, 2013, Request to Staff was received on April 10. (Id.). Plaintiff was scheduled to see the physician on April 11, but he was moved to lockdown and the appointment was rescheduled. Plaintiff was evaluated by a nurse on April 13 and the Dental clinic on April 18. Dr. Beinor saw Plaintiff for unrelated issues on May 16, 2013. (Id.). Plaintiff did not return to sick call with further problems. (Id.).

McCall attests that Plaintiff filed an Inmate Grievance Form No. 1775-13 on June 9, 2013, regarding a request for medical treatment attached as Exhibit B. (Id.). In McCall's decision and reason dated June 27, 2013, he responded that he had thoroughly reviewed the relevant facts, consulted with the dental staff and verified that Plaintiff had been seen by dental on April 18, 2013, and May 9, 2013.(Id.). Plaintiff's request for a partial dental plate was denied as he did not qualify but was informed that there was a means for him to obtain the partial dental plate but he would be responsible for the costs. (Id.).

McCall attached a copy of the Disciplinary Report and Hearing Record regarding an incident on April 2, 2013, which resulted in Plaintiff being placed in SMU-120 on PHD status. (Id.). When Plaintiff refused to leave the Plaza Gate area and assaulted Captain Stonebreaker, Officer McCants witnessed the incident and a copy of his Incident Report was attached as Exhibit C. (Id.). Plaintiff was subdued with spray and taken to medical for assessment. (Id.). McCall attests that he is unaware of any medical requests that were not addressed and all procedures and policies were appropriately followed. (Id.).

Defendants submitted the affidavit of Dr. John McRee who attests that he is the Acting

Medical Director for South Carolina Department of Corrections and is in charge of the medical administration at the correctional institutions. (McRee affidavit, doc. #57-9). Based on Plaintiff's allegations, Dr. McRee reviewed Plaintiff's treatment records and medical summaries which he attached as Exhibit A. Dr. McRee attests that Plaintiff received appropriate care and set forth a summary of Plaintiff's medical records. (Id.). Based on the medical records, Plaintiff had a dental appointment scheduled for March 19, 2013, but was on lockdown. (Id.). Plaintiff was seen in sick call on March 30, 2013, complaining of problems with his mouth and teeth. (Id.). Based upon the assessment, there did not appear to be increased warmth or redness or any abnormalities. (Id.). It was noted that it was unclear if this was related to a prior injury or a new problem but was referred to the doctor for his assessment and orders. (Id.). The dental appointment was rescheduled for April 18, 2013. (Id.). On April 13, 2013, Plaintiff was seen in medical stating that he had been hit in the face with clippers and complained of trouble eating and drinking, a swollen upper right lip, and nerve damage to the right side of his face. (Id.). There were no signs of old contusions noted to the face and he was informed that a request for review of his medicals would be sent to a doctor to review. Plaintiff was seen in the Dental Department on April 18, 2013, where it was noted that tooth #5 was fractured below the gum line which resulted in an extraction. (Id.). Teeth #6-#10 were sensitive to touch and an x-ray revealed necrosis around the tooth pulp and tooth #8 was partially fractured. Plaintiff was prescribed Amoxicillin 500 mg, Ibuprofen 600 mg., Tylenol 3 for three days, and a soft diet for seven days. (Id.). During the follow-up dental appointment on May 9, 2013, Plaintiff complained of pain in teeth #10-11 resulting in an x-ray being taken. (Id.). However, Plaintiff did not want to extract any teeth and requested an outside treatment form which was provided. (Id.). During his Doctor's Clinic visit on May 16, 2013, he complained of swelling in his

11

ankles and feet, lips being dry, nose and shoulder pain. There were no complaints regarding his teeth. Plaintiff was seen on July 1, 2013, July 17, 2013, August 6, 2013, and August 13, 2013, without any complaints of teeth or mouth pain. (Id.). Plaintiff was seen in the Dental Clinic for follow-up on August 27, 2013, when it was noted that tooth #8 was partially fractured and necrosis of the tooth pulp was again detected for which he was given Motrin 400 mg. (Id.). Plaintiff was seen in medical on November 5, 2013, November 8, 2013, and the Mental Health Clinic on November 20, 2013, and January 7, 2014, with no complaints with regard to his mouth. (Id.). Plaintiff did not show for his follow-up dental appointment on January 14, 2014, due to security reasons but was seen in the Dental Clinic on January 21, 2014, for acute gingivitis. (Id.). On February 4, 2014, Plaintiff was seen in sick call complaining of problems with his face and teeth for which an x-ray was completed on his facial bones. (Id.). On August 27, 2014, Plaintiff was seen in sick call related to his arm but referenced the x-ray of his face and sinuses. (Id.). A facial x-ray was ordered and completed. A dental appointment for September 23, 2014, and September 30, 2014, were rescheduled due to security issues. (Id.). Plaintiff was scheduled to see dental on October 7, 2014, but the appointment was canceled because he was uncooperative and ill-tempered. Plaintiff was seen by dental on January 13, 2015, and prescribed an antibiotic and Motrin. (Id.). Dr. McRee attests that Plaintiff was promptly evaluated and treated for his complaints and provided follow-up care. (Id.). There is no indication that he was refused medical attention or that the treatment fell below the accepted standards of medical practice. (Id.). Dr. McRee attests that it is his opinion based on a reasonable degree of medical certainty that Plaintiff has not suffered any injuries caused by or in any way related to the medical treatment or the timing of the medical treatment provided to him at the Correctional Institution. (Id.).

In their memorandum, Defendants argue that based on the dental/medical records, Plaintiff received treatment for his complaints of teeth and facial pain. Defendants assert that Plaintiff received dental care and treatment, has not experienced any serious or life threatening dental problems, and has not had any emergent or urgent dental problems that required immediate or emergency care. (Id.).Further, Defendants contend that Plaintiff fails to provide any competent medical/dental evidence regarding the sufficiency of the Defendants' treatment of Plaintiff's dental problems.  Specifically, Defendants assert that Plaintiff has not offered any competent medical/dental evidence to refute the affidavit testimony of Doctors Akerman and McRee that all of Plaintiff's dental problems were properly and timely evaluated and treated and that Plaintiff did not experience any serious or life threatening dental problems that required emergent or urgent care.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir.2008) (internal quotation marks omitted).

To show a defendant's deliberate indifference to a serious medical need, a prisoner must allege the defendant knew of and disregarded "the risk posed by" that need. Id. "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard, and thus mere negligence in diagnosis or treatment is insufficient to state a constitutional claim. Estelle, 429 U.S. at 105–06, 97 S.Ct. 285. Such indifference can be displayed, however, through the response of prison doctors and other institutional personnel to an inmate's medical needs, including ignoring an inmate's serious

condition or delaying medically necessary treatment. Id. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir.2010) (vacating and remanding summary dismissal of complaint alleging three-month delay in dental treatment); see Smith v. Smith, 589 F.3d 736, 738–39 (4th Cir.2009) (finding claim of delay in administering prescribed medical treatment stated an Eighth Amendment claim).

To state a claim of denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id.

Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against non-medical personnel Michael McCall, Officer McCants, and Captain Stonebreaker. Plaintiff alleges that Officer McCants called medical after seeing "the swelling in his face" but was informed by the nurse that Plaintiff "had been seen on March 31, 2013," and he would have to complete a staff request to be seen again. Therefore, based on Plaintiff's own allegations, Officer McCants did not ignore or delay him medical treatment, and she could rely on the opinion of the medical staff. The only allegation against Capt. Stonebreaker is that he sprayed Plaintiff with chemical munitions after Plaintiff failed to obey directives to return to lock-up. Plaintiff was seen in medical after this gassing incident. (Doc. # 57-9, p. 18 of 25; Medical Encounter 41, dated April 2, 2013). There are no allegations that Capt. Stonebreaker knew of and disregarded Plaintiff's need of dental care. Michael McCall responded

to Plaintiff's Step One grievance dated April 13, 2013, stating he contacted the head nurse who informed him that Plaintiff had been seen on April 13, 2013, and he had been treated appropriately. McCall may rely on the medical staff since he is not medically trained. (Doc. 57-7, p. 7). Plaintiff filed a Step Two grievance. The Step Two grievance was signed by an employee of the medical department stating that Plaintiff had been seen on March 30, 2013, evaluated by the nurse on April 13, 2013, and evaluated by the dental clinic on April 18, 2013. McCall also responded to Plaintiff's grievance dated June 9, 2013, wherein he requested a partial plate and to have additional teeth extracted. McCall responded after consulting with the dental staff and being informed that Plaintiff had been seen in dental April 18, 2013, and May 9, 2013, and that he did not qualify for a partial plate. (Doc. 57-7, p. 10). Therefore, McCall consulted with medical/dental on both grievances which were filed after receiving medical attention and responded to Plaintiff. McCall relied on the opinion of trained medical personnel. See Miltier v. Beorn, supra. Even though Warden McCall may have issued a lock-down in March 2013, there is no evidence that he knew of Plaintiff's injuries at that point or did so to deliberately interfere with Plaintiff's medical treatment. Additionally, McCall can not be held liable in his individual capacity under a theory of supervisory liability because there is no doctrine of respondeat superior in § 1983 claims. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994) (setting forth elements necessary to establish supervisory liability under § 1983). Further, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed. 813 (1983). Accordingly, it is recommended that Summary judgment be granted as to non-medical personnel Defendants McCall, McCants, and Stonebreaker

Upon review of the record, including Plaintiff's dental records, Plaintiff fails to present evidence sufficient to create a genuine issue of material fact as to whether Defendants Jaglal and Stokes were deliberately indifferent to his serious medical needs. The only allegation Plaintiff has made against Nurse Stokes is that "his signature was procured under false pretense by Gwendolyn T. Stokes Lee C.I. Registered Nurse II through Elouise D. Montogmery which denied and or delayed Medical treatment for my most serious medical needs causing me to suffer unnecessary and wanton infliction of pain." (Amend complaint, p. 4). As to Defendant Stokes, she requested that Plaintiff be called to medical and reviewed on April 12, 2013, which was done, and he was seen by Nurse Montgomery on April 13, 2013. Plaintiff alleges that he saw Defendant Jaglal when he was transferred to Lieber Correctional Institution but, although Dr. Jaglal examined him and prescribed medication, he refused to extract the teeth Plaintiff that he asserts the dentist at LCI had indicated he needed extracted. Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the dental treatment provided, not that he was completely denied treatment by these Defendants. In other words, Plaintiff's allegations are not for deliberate indifference to dental/medical care but merely a disagreement with treatment. Also, there is no suggestion or evidence that Defendants maliciously intended to cause Plaintiff pain. The evidence shows he received treatment, including medication, extraction of a tooth, and x-rays. Plaintiff has not shown that any conduct by the Defendants Stokes and Jaglal "shocks the conscious" as required by Miltier v. Beorn, 896 F.2d 848, 851–52 (4th Cir.1990) (citation omitted), overruled in part on other grounds by Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, 846 F.2d

811, 817 (1st Cir. 1988). Any disagreement between an inmate and medical personnel generally fails to state a claim.

Furthermore, if Plaintiff is attempting to file a dental/medical malpractice claim, it fails. Plaintiff has not complied with the requirements of S.C. Code Ann. 15-79-110 and 15-36-100 for filing medical malpractice claims. Plaintiff did not file a notice of intent to file suit and did not file an affidavit of an expert witness prior to filing suit.

However, viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute of material fact as to Defendants Sergeant Borgersrode and Lt. McPherson's knowledge of Plaintiff's medical needs. In the amended complaint, Plaintiff alleges that his entire jaw and bottom facial area were swollen which Sgt. Borgersrode was clearly able to see along with the blood on his clothing when he denied him the ability to see medical. Plaintiff alleges that even though the dentist ordered for him to report on March 19, 2013, Lt. McPherson denied him medical attention stating that there was no inmate movement due to a lock-down and refused to contact someone in medical to come to housing to examine Plaintiff even though he could clearly see the swelling in Plaintiff's face and the injuries to his mouth. (Amended complaint). Plaintiff did not see medical for over two weeks after the alleged incident leaving him in pain. Upon seeing medical, he was given pain medication and scheduled to see the doctor. Plaintiff was seen in the dental clinic on April 18, 2013, whereupon it was noted that he had a fractured tooth, some teeth sensitive to touch with possible inflammation, and another tooth that was partially fractured. Plaintiff was prescribed an antibiotic, pain medication, and a soft diet. Based upon these facts, a genuine issue of material fact exit as to whether these two officers, Borgersrode and McPherson, were indifferent to Plaintiff's medical needs when they should have recognized the necessity of medical care or did recognize the necessity

and ignored it causing a delay in treatment that unnecessarily prolonged Plaintiff's pain. See <u>Sharpe v. South Carolina Dept. Of Corrections</u>, 2015 WL 1500680 (4th Cir. 2015). Therefore, a recommendation of summary judgment is precluded as to Defendants Borgersrode and McPherson pursuant to Rule 56 when viewing the evidence in the light most favorable to the non-moving party.[3]

### C. QUALIFIED IMMUNITY

Defendants deny that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendants assert that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, they are entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

<u>Akers v. Caperton</u>, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does

---

[3] "It is not [this court's] job to weigh the evidence." <u>Gary v. Spillman</u>, 925 F.2d 90, 95 (4th Cir.1991). This court "must view the facts, and all reasonable inferences that may be drawn from those facts, in the light most favorable to the non-moving party." <u>Meyers v. Baltimore Cnty., Md.</u>, ––– F.3d ––––, ––––, 2013 WL 388125 at *4 (4th Cir. Feb.1, 2013).

>     not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendants McCall, McCants, Stonebreaker, Jaglal, and Stokes violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, these Defendants are entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to Defendants McCall, McCants, Stonebreaker, Jaglal, and Stokes.

It is recommended that summary judgment based on qualified immunity be denied as to Defendants Borgersrode and McPherson. It was noted in the record that Plaintiff had edema when seen by medical/dental, he had cracked teeth, his mother was calling about his pain, and other evidence of record, in the light most favorable to the Plaintiff, substantiate his version of the facts. While the record indicates there was a lockdown and that certainly some delay could be "necessary," the record does not reveal why the length of delay was "necessary" under the facts most favorable

19

to Plaintiff.[4] Under Plaintiff's version of the facts, Defendants' actions are not shielded by qualified immunity because a reasonable officer in that position would have understood that Plaintiff needed medical attention without "unnecessary" delay.

### III.  CONCLUS ION

Based on the above reasoning, it is recommended that the motion for summary judgment by Defendants McCall, McCants, Stonebreaker, Jaglal, and Stokes be GRANTED and DENIED as to Defendants Borgersrode and McPherson. It is further recommended that Plaintiff's motions for summary judgment (docs. #38 and #44) be DENIED.

                                                  Respectfully submitted,

                                                  s/Thomas E. Rogers, III
                                                  Thomas E. Rogers, III
                                                  United States Magistrate Judge

May 15, 2015
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[4] In other words, the record does not explain why a delay was necessary other than the unit was on lockdown. It is not clear why these officers would not have contacted medical personnel or taken other action after any necessary delay.