# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Supreme Raheem Ackbar a/k/a Ronald Gary,<br><br>  Plaintiff,<br><br>vs.<br><br>Michael McCall, Sergeant Bogastroke, Lt. McPherson, Officer McCants, Captain Stonebreaker, Rammarine Jaglal, Lieber CI Dentist, and Gwendolyn T. Stokes, Registered Nurse II, Lee Correctional Institute,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)  Civil Action No. 4:14-cv-2246-RMG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **ORDER**<br>)<br>)<br>) |

This matter comes before the Court on Defendants' motion to dismiss or, in the alternative, for summary judgment (Dkt. No. 57), and Plaintiff's motions for summary judgment (Dkt. Nos. 31, 40). The Magistrate Judge issued a Report and Recommendation ("R & R") on May 15, 2015 recommending that the Defendants' motion be granted as to Defendants McCall, McCants, Stonebreaker, Jaglal, and Stokes, and denied as to Defendants Borgersrode and McPherson. Plaintiff filed objections to the R & R (Dkt. No. 74) and Defendant filed objections to the R & R (Dkt. No. 84) and a reply to Plaintiff's objections (Dkt. No. 87). The Court hereby ADOPTS the R & R, GRANTS Defendants' motion as to Defendants McCall, McCants, Stonebreaker, Jaglal, and Stokes, and DENIES Defendants' motion as to Defendants Borgersrode and McPherson.

-1-

## Background

Plaintiff, a prisoner of the South Carolina Department of Corrections, is currently housed at the Lieber Correctional Institution and was formerly housed at Lee Correctional Institution, where the relevant events took place. He brings suit complaining that on March 12, 2013, he was "viciously struck in the face with a pair of steel barber hair clippers" and suffered "broken teeth, split gums, upper lip, and swelling of [his] entire jaw and bottom facial area." (Dkt. No. 32 at 2). He alleges that despite notifying Sgt. Borgersrode on the day of the incident, and further attempting to be seen for medical and dental treatment on March 19, 2013 (when he had a previously scheduled dental appointment but was denied access because the housing unit was on lockdown), he was not seen by medical until March 30, 2013, when he was given ibuprofen for pain. (Dkt. No. 65 at 4). He was again denied medical treatment on April 1, 2013, and April 2, 2013, and on April 2, after refusing to return to lock-up and physically fighting with a guard, he was sprayed with pepper spray. On April 18, 2013 he was first seen for a dental examination, which showed that one tooth was fractured below the gum line, two more were inflamed and sensitive to the touch, and a fourth tooth was partially fractured. (Dkt. No. 65 at 5). Specifically, he alleges that Defendants McPherson and Borgersrode denied him medical treatment on March 19, 2013, Defendant Stonebreaker denied him medical attention on April 1, 2013, Defendant McCants denied him medical treatment on April 2, 2013, and Defendant McCall denied a step one grievance form dated April 23, 2013. He also alleges that Defendant Jaglal, who works at Lieber Correctional Institution, refused to extract the teeth Plaintiff asserts the dentist at LCI had indicated he needed extracted, and that Nurse Stokes procured "his signature... under false pretenses." (Dkt. No. 65 at 16).

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or the recommendations made by the magistrates." 28 U.S.C. § 636(b)(1). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "When determining whether the movant has met its burden, the court must assess the documentary materials submitted by the parties in the light most favorable to the nonmoving party." *Id.* The party seeking summary judgement shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not

-3-

suffice, nor does a 'mere scintilla of evidence'" in support of the nonmoving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

## Analysis

As the R & R explains, "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). The R & R ably recited the relevant facts and applicable law and the Court therefore turns only to the objections filed by Defendants.[1]

Defendants have filed objections to the R & R arguing that "the Magistrate Judge discounted key portions of the Affidavits of Defendants . . . which conclusively established that Plaintiff was not injured as a result of any alleged delay in treatment" and that the R & R "erroneously relied upon the Dental Clinic's April 18, 2013 assessment to establish Plaintiff had a 'serious medical need' on March 12, 2013 and March 19, 2013." This position misapprehends the appropriate standard for a summary judgment motion. No number of affidavits may "conclusively establish" an issue of material fact where, as here, the Plaintiff disputes their veracity and presents conflicting evidence in the form of medical records kept by Defendants themselves. And neither the Court nor the Magistrate Judge has "established" that a serious

---

[1] Plaintiff also filed objections, which largely repeat assertions from the complaint, or dispute minor facts that would not affect the outcome of the case. To the extent Plaintiff fails to point to a specific error in the R & R and simply makes conclusory objections, the Court need not conduct a *de novo* review. *Smith v. Washington Mut. Bank FA*, 308 Fed.Appx. 707, 708 (4th Cir. 2009)

-4-

medical need existed on March 12 and March 19; however, there is a genuine dispute as to whether such a medical need existed, as is evidenced by the dental records showing multiple fractured teeth, one extraction, further recommended root canals and/or extractions, and the prescription of antibiotics.

Dr. Akerman, the SCDC Dental Director, attests that even if Plaintiff had requested medical attention on March 12, 2013, which Defendants assert he did not, the treatment would not have been any different. "Dr. Akerman attests that the treatment would have been nominal to provide time for the teeth to heal and allow a proper assessment of his teeth and gums." (Dkt. No. 65 at 5). Defendant Borgersrode attests that he did not observe or know of any injuries he sustained on March 12, 2013. (*Id.*).

Of course, at this stage in proceedings, the Court is not to engage in credibility determinations, but rather must view the evidence in the light most favorable to Plaintiff as the nonmoving party. *See Okoli v. City of Baltimore*, 648 F.3d 216, 231 (4th Cir. 2011). Therefore, it would be inappropriate to accept for purposes of summary judgment Dr. Akerman's opinion as to whether Plaintiff's medical needs were serious and his conclusion that if Plaintiff had hypothetically been seen earlier, the appropriate treatment would have been to withhold medication and assess whether his fractured teeth would have healed on their own. Taken in a light most favorable to the Plaintiff, the facts alleged show that he repeatedly requested medical treatment commencing on March 12, 2013, when the clipper incident took place, and a copy of a grievance form submitted by Defendants corroborates this account (Dkt. No. 57-7 at 6 ("On 4-3-13 Grievant submitted a third request to staff to medical requesting emergency medical treatment regarding a suspected broken nose, swollen lip, swollen gums, and chipped teeth to which was

sustained in early mid March of 2013 by a pair of state clippers. The request was never answered just as the others was unanswered. Since then grievant has submitted other requests seeking medical attention for the aforesaid injuries and has yet to receive medical attention. Grievant is suffering irreparable damage medically . . . .")).

Plaintiff further alleges that he was unable to attend a previously scheduled dental appointment on March 19, 2013, and that in the days following the clipper attack, he developed an infection that was not treated, despite repeated requests to be seen in medical. On April 8 and April 14, his mother called the prison reporting that her son was having problems with his teeth and eating and was afraid of infection; the nurse noted in his medical records that she did not discuss his condition with his mother because there was no medical release on file. (Dkt. No. 57-9 at 18). Defendants contend that Plaintiff "was seen by medical on April 13, 2013 and there was no sign of an old contusion or any infection . . . Mr. Ackbar did not report his injuries to security staff immediately after the incident or he would have been seen at that time." (Dkt. No. 57-9 at 6, Affidavit of Dr. McRee, Acting Medical Director for SCDC). However, on April 18, 2013, Plaintiff was examined at the dental clinic "to evaluate trauma to upper right and anterior teeth; #5 is fractured below the gumline; 6-10 are + to percussion and xray shows periapical radiolucencies; #8 is fractured incisal 2/3; surgical extraction #5." (Dkt. No. 57-9 at 17). He was also prescribed Amoxicillin, an antibiotic.

On May 9, 2013, he was seen for followup and for complaints for pain, where it was noted that he would "need root canals to save the teeth" (*id.*). He was also prescribed another antibiotic, Cephalexin (Keflex). There is no indication of whether the antibiotics at the two appointments were prescribed to treat an infection or as a prophylactic measure along with the

tooth extraction, and the fact that his dental records from April 18 note trauma, fractures, and percussion sufficient to require at least one extraction and further extractions or root canals raises an issue of material fact as to whether Defendants McCall, Borgersrode and McPherson were deliberately indifferent to a serious medical condition.

On June 10, 2013, Plaintiff filed a grievance step one form complaining that he had been recommended extraction of additional infected teeth but was unable to get the prison to provided him with an appointment. He also requested partial plate of the teeth to be extracted. On July 2, 2013, Plaintiff filed a grievance step two form, stating that "it is possible that the infection could have been prevented" had he been appropriately treated earlier. (Dkt. No. 57-9 at 25). The official who signed the form (signature illegible) responded that "The Loss of teeth while an inmate is in the custody of the SCDC will not guarantee replacement of those teeth. . . You do not meet the qualifications for a dental prosthetic appliance." (*Id.*). It appears that between August 2013 and January 2015, Plaintiff was scheduled for several dental appointments, one of which was canceled because of a prison lock down and one of which was canceled because of his "ill temper." (Dkt. No. 57-9 at 3-5). No further treatment other than ibuprofin is noted in his record, despite the earlier notes indicating that he needed root canals and/or extractions on multiple teeth. Therefore, an issue of material fact also exists as to whether prison officials were deliberately indifferent to a serious medical need following the extraction on April 18, 2013.

Defendant McPherson attested in his affidavit that when the prison is in lock down, medical appointments not constituting an emergency are canceled, and "a tooth hurting, absent other severe complications, would not constitute an emergency." (Dkt. No. 57-4 at 2). Defendants' objections also cite to a district court case finding that a "medical need serious

enough to give rise to a constitutional claim involves a condition that places the inmate at substantial risk of serious harm, usually loss of life or permanent disability, a condition for which lack of treatment perpetuates severe pain, and also presents a serious medical need." Although that decision was upheld by an unpublished, nonbinding, per curiam opinion by the Fourth Circuit, *Acevedo v. Warner*, 155 Fed. App'x 95 (2005), more recent Fourth Circuit precedent indicates that a where there is a genuine dispute of material fact as to delay of significant dental care that is not inadvertent, summary judgment is precluded. In *Sharpe v. South Carolina Dep't. Of Corrections*, the Fourth Circuit reversed a District of South Carolina decision granting summary judgment to SCDC staff who failed to respond to repeated requests by the plaintiff for dental care. *See Sharpe v. South Carolina Dep't of Corrections*, 2014 WL 4793829, *aff'd in part, vacated in part, remanded,* No. 14 7582, 2015 WL 1500680 (4th Cir. Apr. 3, 2015). The facts in *Sharpe* were very similar to those presented here; the plaintiff alleged pain and significant trauma in multiple teeth, and despite medical notes indicating that he needed a root canal and/or extraction, treatment was delayed between January 2012 and June 2013. Although that plaintiff was scheduled for approximately fifteen dental visits and was seen for nearly a dozen of them (several being canceled for security reasons), the Court concluded on appeal that there was a genuine issue of material fact as to whether the defendants evinced deliberate indifference by "acting intentionally to delay or deny the prisoner access to adequate medical care." 2015 WL 1500680 at *1. In other words, although "an inadvertent failure to provide adequate medical care" does not satisfy the standard, and thus mere negligence in diagnosis or treatment is insufficient, "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Id.* This case is

therefore inappropriate for disposition on summary judgment as to the defendants who denied Plaintiff's requests for dental care.

## Conclusion

After a careful review of the entire record before the Court, the briefs of the parties, the R & R of the Magistrate Judge and relevant legal authorities, the Court (1) **ADOPTS** the R & R in part (Dkt. No. 65) as the order of the Court; (2) **GRANTS** Defendants' motion (Dkt. No. 57) as to Defendants McCall, McCants, Stonebreaker Jaglal and Stokes; (3) **DENIES** Defendant's motion (Dkt. No. 57) as to Defendants Borgersrode and McPherson; and (3) **DENIES** Plaintiff's motions for summary judgment (Dkt. Nos. 31 and 40). By separate order, the Court intends to appoint counsel for Plaintiff.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

July 15, 2015
Charleston, South Carolina